```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - X
                                               :
In re:                                         :   Chapter 7
                                               :
       NICHOLAS TARTAGLIONE,                   :   Bankruptcy Court
                                               :   Case No.
                                 Debtor.       :   04 B 22783 (ASH)
                                               :
- - - - - - - - - - - - - - - - - - - - - - - X
                                               :   Adv. Proc. No. 06-8288
BARBARA BALABER-STRAUSS, as Trustee of         :
the Estate of Nicholas Tartaglione,            :
                                               :
           Plaintiff-Appellee,                 :
                                               :   06 Civ. 13560 (WCC)
         - against -                           :         ECF CASE
                                               :
NICHOLAS TARTAGLIONE, MICHAEL                  :
TARTAGLIONE and FLOORING N' MORE, INC.,        :       OPINION
                                               :     AND ORDER
           Defendants-Appellants.              :
                                               :
- - - - - - - - - - - - - - - - - - - - - - - X
```

**A P P E A R A N C E S :**

        ROBERT S. LEWIS, ESQ.
        **Attorneys for**
        **Defendants-Appellants**
        53 Burd Street
        Nyack, New York 10960

ROBERT S. LEWIS, ESQ.
    Of Counsel

        WILLIAM F. MACREERY, ESQ.
        **Attorneys for**
        **Plaintiff-Appellee**
        7 Granite Springs Road
        Granite Springs, New York 10527

WILLIAM F. MACREERY, ESQ.
    Of Counsel

        **Copies E-Mailed to Appellee Counsel**
        **of Record and Mailed to Appellants**
        **Counsel of Record on 2/4/08**

**Conner, Senior D.J.:**

Appellants Nicholas Tartaglione (the "Debtor"), Michael Tartaglione and Flooring N' More, Inc. appeal from an order of U.S. Bankruptcy Judge Adlai S. Hardin, Jr. striking the Debtor's answer in his Chapter 7 adversary proceeding and entering a default judgment against appellants, jointly and severally, in the amount of $118,939.81. Appellants argue that the Bankruptcy Court abused its discretion by imposing so severe a sanction in response to their failure to fulfill their discovery obligations. For the following reasons, the order is affirmed.

## BACKGROUND

On May 17, 2004 ("the filing date"), the Debtor filed a voluntary petition in the United States Bankruptcy Court seeking relief under Chapter 7 of Title 11 of the United States Code. (5/15/06 Complt. ¶ 6.)[1] Appellee was appointed interim trustee (the "Trustee") of the Debtor's estate and became permanent trustee at the first meeting of creditors, which was held on June 22, 2004. (*Id.* ¶ 7.)

Appellee then began her investigation of the Debtor's finances. On the Schedules and Statement of Financial Affairs that the Debtor submitted as part of his filing, he stated that he had not had any business income or any interest in any business within two years of the filing date. (*Id.* ¶ 14.) However, three out of the four creditors listed by the Debtor were contracting companies holding commercial claims, one of which was a claim by Flooring Technologies, Inc. against Carpet

---

[1] Appellee filed two complaints in the bankruptcy proceedings. As discussed below, the first, dated April 18, 2006, sought denial of the Debtor's discharge; and the second, dated May 15, 2006, sought to impose a constructive trust and avoid an alleged fraudulent transfer. Unless otherwise indicated, the facts taken from the complaints are undisputed.

1

N' More, a flooring business the Debtor ran in 2002. (*Id.* ¶¶ 18, 23.)

Carpet N' More was located at 294 Main Street, Nyack, New York (the "Nyack premises"). (*Id.* ¶¶ 3-5.) In approximately 2002 – the record is unclear as to when, exactly – Carpet N' More ceased operations and a new business, known as Flooring N' More, began operating out of the Nyack premises. (2/9/05 Rule 2004 Exam. Tr. at 21-24.) Michael Tartaglione, the Debtor's son, was the owner and principal of Flooring N' More, which was engaged in the same kind of operations as Carpet N' More. (*Id.* at 21-22.) As of February 2005, the Nyack premises still displayed a sign bearing the name Carpet N' More. (*Id.* at 22-23.) This appeal arises out of appellee's action to impose a constructive trust on the business operating at the Nyack premises, or to avoid the transfer of that business from the Debtor to Michael Tartaglione as a fraudulent conveyance. (Appellee Br. at 7.)

Appellee claims that during her initial investigation of the Debtor's filing, Flooring Technologies' attorney told her that the Debtor was a principal and owner of Carpet N' More, and that Carpet N' More was still operating out of the Nyack premises. (4/18/06 Complt. ¶ 16.) Upon learning this, appellee requested additional information and documentation from the Debtor relating to Carpet N' More. The Debtor, through his attorney, "responded to the effect that there were no records or information pertaining to any business conducted by the Debtor." (*Id.* ¶ 17.)

Appellee then obtained a Bankruptcy Court order directing the Debtor to appear at an examination pursuant to FED. R. BANKR. P. 2004. The order also required him to produce various documents, including bank statements, cancelled checks, financial statements related to Carpet N' More, Carpet N' More's income tax returns, Carpet N' More's W-3 tax forms and Carpet N' More's customer records. The Debtor did not produce these or any other documents (*id.* ¶ 20), and at the

examination he testified that he was not in possession of any of these documents. (2/9/05 Rule 2004 Exam. Tr. at 15.) He claimed to have no records at all from the business. (*Id.* at 16, 25.)

Appellee then commenced an adversary proceeding seeking to deny the Debtor's discharge on the grounds that he wrongfully withheld information relating to his business, made knowingly false statements on his Schedules and Statement of Financial Affairs and was engaged in a continuous plan and scheme to hide his assets and defraud his creditors. (4/18/06 Complt. ¶¶ 26, 33, 37.) The Debtor failed to appear or answer the complaint, and the Bankruptcy Court entered a default judgment denying his discharge.

When appellee commenced a second adversary proceeding against the Debtor, this time to impose a constructive trust on the business at the Nyack premises or avoid the transfer of that business to Michael Tartaglione, the Debtor again failed to respond to the complaint. (7/26/06 Hr'g Tr. at 3.) And at a July 6, 2006 hearing, the Bankruptcy Court gave the Debtor a blunt warning about his duty to comply with discovery demands:

> THE COURT: Okay. Get your discovery out for anybody that answers – the day after they answer I suggest to you.
> MR. MACREERY: Very well, Your Honor.
> THE COURT: Because, yes, you do need to conduct discovery, and once again, Mr. Tartaglione, if [appellee's attorney] asks for documents and you don't comply with the discovery then he can make a motion if so advised to strike your answer and for a default judgment under the Federal Rules.
> MR. TARTAGLIONE: I understand.
> THE COURT: So this is not a game, you're going to have to play by the rules and if not you'll have a judgment entered against you for sure.

(*Id.* at 6-7.) During the conference the Bankruptcy Court entered an order requiring all discovery to be completed by October 4, 2006. (Appellants Br. at 4; Appellee Br. at 9.)

Despite the Bankruptcy Court's warning, discovery did not go smoothly. Appellee received

no response to an initial demand for disclosure or to two follow-up letters to appellant's counsel. (Appellee Br. 11.) As a result, appellee moved on September 20, 2006 to strike appellants' answer for failure to respond to discovery and for entry of a default judgment. (*Id.*)

Appellee received a response to her interrogatories the day before the hearing on the motion, and appellants produced some documents at the hearing, which took place on September 28, 2006. (9/28/06 Hr'g Tr. at 3-4.) However, the Debtor failed to produce documents such as tax returns, inventories, payroll records and financial statements relating to his business, claiming through his attorney that such documents did not exist. (*Id.* at 3.) The Bankruptcy Court granted appellee's motion to strike appellants' answer and entered a default judgment against them. (*Id.* at 5-6.)

## DISCUSSION

**I.     Standard of Review**

We review a bankruptcy court's conclusions of law *de novo*. *See In re Colonial Realty Co.*, 980 F.2d 125, 130 (2d Cir. 1992); *In re Peters*, 133 B.R. 291, 294 (S.D.N.Y. 1991). We must accept the Bankruptcy Court's findings of fact unless they are clearly erroneous, and give "due regard . . . to the opportunity of the bankruptcy court to judge the credibility of the witnesses." FED. R. BANKR. 8013; *see also In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988 (2d Cir. 1990); *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1388 (2d Cir. 1990). A court's imposition of sanctions under FED. R. CIV. P. 37 is reviewed for abuse of discretion. *See Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir. 1990). And "the factual findings upon which sanctions are based will not be disturbed unless they are shown to be clearly erroneous." *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991) (internal quotations omitted).

4

## II. Rule 37 Sanctions

FED. R. CIV. P. 37(b)(2)(A) provides that, if a party fails to comply with an order to permit discovery, the court may issue an order "striking pleadings in whole or in part" or "rendering a default judgment against the disobedient party." These sanctions are available in bankruptcy adversary proceedings. FED. R. BANKR. P. 7037. Rule 37 sanctions serve three purposes:

> First, they ensure that a party will not benefit from its own failure to comply. Second, they are specific deterrents and seek to obtain compliance with the particular order issued. Third, they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault.

*Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988). Although the Second Circuit has observed that some of Rule 37's penalties can be "harsh" and a form of "strong medicine," it has acknowledged the need to apply them in appropriate cases. *See id.*; *see also Daval Steel*, 951 F.2d at 1365 (stating that "severe sanctions are appropriate" when a party has sought to frustrate the discovery process by withholding essential facts); *Sieck v. Russo*, 869 F.2d 131, 134 (2d Cir. 1989) ("Were we to adopt a position that overly inhibits the imposition of the harsher sanctions authorized by Rule 37, we would turn the rule into a 'paper tiger.'") (quoting *Update Art*, 843 F.2d at 71).

While Rule 37's harshest remedies should be imposed only for "serious violations of discovery orders," they "are justified . . . when the failure to comply with a court order is due to willfulness, or bad faith, or is otherwise culpable." *Daval Steel*, 951 F.2d at 1367. In deciding whether to sanction a party, a court should consider the violation at issue in the context of that party's behavior throughout the entire case. *See Penthouse Int'l, Ltd. v. Playboy Enters., Inc.*, 663

F.2d 371, 388 (2d Cir. 1981) ("[I]t would be excessively formalistic to view the defiance of the order in isolation rather than against the background of [plaintiff's] prolonged and vexatious obstruction of discovery."); *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979) ("[S]anctions must be weighed in light of the full record in the case.").

There are two limitations on a court's discretion to impose Rule 37 sanctions: "The rule expressly requires that the sanctions be 'just'; and the sanction must relate to the particular claim to which the discovery order was addressed." *Daval Steel*, 951 F.2d at 1366 (citing *Ins. Corp. of Ir. v. Compagnie des Bauxites*, 456 U.S. 694, 707-08 (1982)). Whether a sanction is just depends on whether the court abused its discretion in imposing it. *See id.* Here, appellants do not argue that the second part of this test has not been met. The only issue for us to decide, therefore, is whether the Bankruptcy Court abused its discretion in striking appellants' answer and entering a default judgment against them.

### III.  The Bankruptcy Court's Discretion to Impose Sanctions

Appellants argue that the Bankruptcy Court abused its discretion in imposing sanctions because "the factual conclusion of the Bankruptcy Court that [appellants] had not produced responses to interrogatories or document requests was erroneous." (Appellants Br. at 9.) This argument fails because the Bankruptcy Court's order is not based on any such finding, and the Court was not required to make such a finding before imposing sanctions. A determination that the responses were inadequate is enough to support sanctions. *See John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172, 1176 (2d Cir. 1988); *Cine*, 602 F.2d at 1064-65.

In *John B. Hull*, the Second Circuit upheld the dismissal of the plaintiff's complaint under

6

Rule 37 where the plaintiff had repeatedly failed to answer interrogatories regarding its theories of causation and damages and then eventually provided answers that the district court found inadequate. *See*, 845 F.2d at 1176. The court of appeals observed that the plaintiff had failed to provide "any meaningful discovery concerning a core trial issue," despite clear warnings from the district court that the plaintiff risked having its case dismissed. *See id.* at 1176. The Debtor, like the plaintiff in *John B. Hull*, failed to provide adequate answers to interrogatories and other discovery requests. (9/28/06 Hr'g Tr. at 3-4.) And those requests, like the ones in *John B. Hull*, concerned a critical issue: the value of the business the Debtor allegedly transferred to his son for no consideration shortly before filing for bankruptcy. (*Id.* at 4.) Finally, the Debtor, like the plaintiff in *John B. Hull*, received a clear warning as to the possible consequences of his non-compliance (*see* 7/6/06 Hr'g Tr. at 6-7), despite the fact that the Court was not required to give him one. *See Daval Steel*, 951 F.2d at 1366 ("Although formal warnings often precede the imposition of serious sanctions, this court has never considered warnings an absolute condition precedent. . . . Parties and counsel have no absolute entitlement to be 'warned' that they disobey court orders at their peril."). The fact that appellants eventually provided some sort of response to discovery requests does not preclude the imposition of sanctions.

Appellants also argue that sanctions were improper because discovery was not scheduled to close until October 4, six days after the hearing at which the Bankruptcy Court granted appellee's motion to strike the answer. (*See* Appellant Br. at 4-5.) In effect, appellants assert the right to drag their feet throughout the entire discovery process and cure the defects at the eleventh hour (and then only when threatened with a default judgment). This position is at odds with the Second Circuit's view of how discovery should work: "It is intended that [the] disclosure of evidence proceed at the

7

initiative of the parties, free from the time-consuming and costly process of court intervention." *Daval Steel*, 951 F.2d at 1365. The court has warned that, "'[i]f parties are allowed to flout their obligations, choosing to wait to make a response until a trial court has lost patience with them, the effect will be to embroil trial judges in day-to-day supervision of discovery, a result directly contrary to the overall scheme of the federal discovery rules.'" *Cine*, 602 F.2d at 1068 (quoting *Dellums v. Powell*, 566 F.2d 231, 235-36 (D.C. Cir. 1977)). Such a result "would encourage dilatory tactics, and compliance with discovery orders would come only when the backs of counsel and the litigants were against the wall." *Id.*

We are therefore unsympathetic to appellants' argument that the "timeliness" of their inadequate compliance immunizes them against sanction. Appellants cite no case law, and the Court is not aware of any, holding that a court may not impose Rule 37 sanctions before the close of discovery.[2] As previously noted, the Debtor was denied discharge in the first adversary proceeding because he failed to document his financial affairs, and a default judgment was entered against him because he failed to answer the complaint. He likewise did not timely answer the complaint in the second adversary proceeding; moreover, he failed to produce required documents before his Rule 2004 examination, and ignored two letters from appellee requesting discovery in the second adversary proceeding. It was not until appellee moved to strike appellants' answer and enter a default judgment that appellants responded to interrogatories and commenced producing documents, and even then the belated responses and document production were clearly deficient. In that context,

---

[2] Since the Debtor submitted an affidavit stating that he had no other responsive documents and had answered the interrogatories to the best of his ability, the Bankruptcy Court could reasonably have concluded that it was unnecessary to wait until the close of discovery to rule on appellee's motion. (Tartaglione Aff.¶¶ 3-7; *see also* Appellants Br. at 8 ("The defendants produced whatever documents were in their possession . . . .").)

the Bankruptcy Court was certainly within its discretion to conclude that appellants had been given all the chances they deserved. To rule otherwise would have entangled the Court in exactly the sort of "day-to-day supervision of discovery" that the rules are meant to avoid. *See Cine*, 602 F.2d at 1068.

Appellants next argue that they produced all the responsive documents in their possession, and that their failure to produce anything more can not be considered the sort of willful, bad faith or culpable conduct that would justify a severe sanction. (Appellants Br. at 8.) It is true of course that a party can not be sanctioned for failing to produce documents that it does not possess and can not obtain. *See, e.g*, *Shcherbakovskiy v. Da Capo Al Fine, Ltd.,* 490 F.3d 130, 138 (2d Cir. 2007). But whether appellants did in fact produce all responsive documents in their possession and control is a question of fact, and we may not disturb the Bankruptcy Court's finding unless it is "clearly erroneous." *See, e.g.*, *Daval Steel*, 951 F.2d at 1365; *cf.* FED. R. BANKR. P. 8013 ("[D]ue regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.").

Our review of the record indicates that the Court had adequate reason to doubt the Debtor's credibility on this issue, particularly given his ongoing failure throughout the entire bankruptcy process to produce critical documents and information. For example, his Schedules and Statement of Financial Affairs stated that he had no business income or interest in any business for two years prior to the filing date, yet at least three of the four creditors listed in his Schedules and Statement of Financial Affairs held commercial claims. (5/15/06 Complt. ¶ 18.) The Debtor then further contradicted himself at his Rule 2004 examination by testifying that he owned Carpet N' More until at least December 2002, which was within two years of the filing date, and that he was paid approximately $300,000 for a job around that time. (2/9/05 Rule 2004 Exam. Tr. at 53-55.) And,

9

of course, there is the fact that the Debtor claimed to have retained no records whatever of the business he once owned, and that he did not have a single piece of paper related to a $300,000 job that was the subject of a claim against him:

> Q: Is it your testimony, sir, that you have no records for Carpet N' More for your business for any time that it was engaged in business?
> A: I have nothing, sir, no.

(*Id.* at 25.)

> Q: And are you telling me that you don't have any pieces of paper whatsoever for that job that was for more than $300,000?
> A: We had, but I no longer have them.
> Q: And what became of them?
> A: I honestly can't tell you.

(*Id.* at 53.)

This is the context in which the Debtor, through his attorney, appeared at the hearing on appellee's motion and claimed that most of the business records appellee had asked for – including inventories, payroll records, tax returns and financial statements – did not exist. And in that context, the Bankruptcy Court was well within its discretion to view this as non-compliance and impose sanctions.

## IV. The Severity of the Sanction Imposed

Appellants argue that the Bankruptcy Court abused its discretion because "the sanction was harsh and excessive . . . and . . . the Court could have imposed a less onerous sanction, if indeed, a sanction was warranted." (Appellants Br. at 9.) The Second Circuit has taken a dim view of this argument:

> Apparently, defendants perceive that the function of a reviewing court is to search,

10

>like Goldilocks, for a sanction that is not too hard, not too soft, but one that is just right. We, however, prefer to play the other role in that story, and provide the teeth to enforce discovery orders by leaving it to the district court to determine which sanction from among the available range is appropriate.

*Sieck*, 869 F.2d at 134.

The most severe Rule 37 sanctions are appropriate only where there has been a "serious violation[]" of a discovery order that is "due to willfulness, or bad faith, or is otherwise culpable." *Daval Steel*, 951 F.2d at 1367. The violations at issue here are clearly serious: they affected a critical issue before the Bankruptcy Court (the value of the business that the Debtor allegedly transferred to his son for no consideration immediately before filing for bankruptcy); they were wide in scope (appellants produced few if any of the requested documents) and they continued throughout the course of the proceedings.

Furthermore, our review of the record reveals ample support for a finding of willfulness, bad faith or other culpability. As detailed above, throughout his entire bankruptcy process, including both adversary proceedings, the Debtor repeatedly failed to produce critical documents or respond to proper document requests and interrogatories, and there was reason to doubt his credibility and forthrightness. In light of that track record, the Bankruptcy Court was within its discretion to conclude that no lesser sanction was appropriate. The Court did not abuse its discretion in striking appellants' answer and entering a default judgment against them.

## CONCLUSION

For all of the foregoing reasons, the order of the bankruptcy court is affirmed, and the appeal is denied.

SO ORDERED.

Dated: White Plains, New York
February 5, 2008

*William C. Conner*
Sr. United States District Judge